EMA ELDER V. PANHANDLE STAGES SHUTTLE SERVICE.

No. A-731. Decided March 13, 1946.
Rehearing overruled April 10, 1946.
(193 S. W., 2d Series, 170.)

*Sanders & Scott* and *Albert Smith*, all of Amarillo, for petitioner.

The Court of Civil Appeals erred in holding that as a matter of law the bus driven by R. D. Ellerd could not have avoided the injury to petitioner. Galveston H. & S. A. Ry. Co. v. Wagner, 298 S. W. 552; East Texas Theatres v. Swink, 142 Texas 268, 177 S. W. (2d) 195, 198; Jackson v. Galveston H. & S. A. Ry. Co., 90 Texas 372, 38 S. W. 745.

*Strasburger, Price, Holland, Kelton & Miller,* and *Hobert Price,* all of Dallas, for respondent.

There was no showing in the record that Ellerd could have avoided this accident after the bus driven by McBride, which inflicted the injuries on Mrs. Elder, swerved out of its proper lane of traffic.

Sugarland Industries v. Daily, 135 Texas 532, 143 S. W. (2d) 931; Terry v. English, 130 Texas 632, 112 S. W. (2d) 446; Turner v. Texas Co., 138 Texas 380, 159 S. W. (2d) 112.

MR. JUSTICE HICKMAN delivered the opinion of the Court.

Petitioner, Ema Elder, sued respondent, Panhandle Stages

Shuttle Service, for damages for personal injuries sustained by her when she was struck and knocked to the pavement by a bus owned by it and being operated by Roy McBride. Upon a finding by the jury that her own negligence contributed to her injuries, judgment was rendered that she take nothing. That judgment was affirmed by the Court of Civil Appeals. 189 S. W. (2d) 762.

The controlling question for decision is whether the trial court erred in refusing to submit issues requested by petitioner on the theory of discovered peril. The accident occurred early on the morning of February 3, 1944, at the intersection of Northeast Eighth and Williams Street in the City of Amarillo. Northeast Eighth Street runs east and west and is a thoroughfare leading from downtown Amarillo to Amarillo Army Air Field and the Pantex Ordnance Plant. The paved portion thereof is divided into three traffic lanes marked by stripes painted on the pavement. Petitioner entered the intersection with the intention of crossing Northeast Eighth Street from south to north. Her purpose was to board an intracity bus at a point on the north side of the street designated as a bus stop. Petitioner's busses were engaged in transporting passengers between the city and the Army Air Field and not in transporting passengers between points within the city. They did not make use of the bus stop.

The opinion of the Court of Civil Appeals makes this clear statement of the facts and circumstances surrounding the accident: "Before entering the intersection appellant (petitioner) looked to the west and to the east along Northeast Eighth Street. To the west she saw an automobile moving eastward in the south lane, and to the east another automobile proceeding westward in the north lane; she saw no other cars. Appellant estimated that both vehicles were one hundred to one hundred fifty feet from the intersection and traveling at a speed of twenty-five to thirty miles per hour. After entering the intersection appellant kept her lookout to the west until she crossed the south traffic lane, observed that the center lane was clear both to the west and the east, and then, with her lookout to the east, proceeded across the center lane to a point about two feet south of its north boundary. There she stopped with the intention of permitting the westbound vehicle (a bus belonging to appellee) to pass in front of her before she went on to the bus stop. A second or two after she had stopped, appellant was struck by the left rear side of an eastbound bus belonging to appellee. This bus was passing the car which appellant had noticed in the south lane of the street as she entered the intersection. Appellant freely testified that she never saw the bus which struck her. She

thought the westbound bus passed her at about the time she was struck."

In answer to special issues the jury found that Roy McBride, the driver of the truck which struck petitioner, was negligent in three particulars, each of which acts of negligence was a proximate cause of her injuries. The jury further found that petitioner failed to keep such a lookout for traffic as would have been kept by a person of ordinary prudence under the same or similar circumstances, which failure was also a proximate cause of her injuries. Upon that verdict the trial court rendered judgment that petitioner take nothing.

The bus traveling in the opposite direction from the one which struck petitioner was being operated at the time by R. D. Ellerd. It is petitioner's position that Ellerd discovered her perilous position in time to have averted her injuries. That had he either brought his bus to a stop or driven the same off onto the shoulder as soon as he realized her perilous position she would have walked on in the direction in which she had been going across the street and by so doing would have avoided being struck by the bus operated by McBride. Before the case was submitted to the jury there were prepared in her behalf various special issues with respect to these matters framed in conformity with the theory of liability on the ground of discovered peril. The trial judge refused to submit these requested issues to the jury and the controlling question for decision here is whether or not he erred in so doing. Stated differently, this case turns upon the sole question of whether this record affords any basis for the application of the doctrine of discovered peril.

■ Petitioner admittedly cannot recover damages on account of the negligence of Roy McBride, the driver of the bus which struck her and produced her injuries. This because, although he was negligent in at least three particulars, as found by the jury, each of which was a proximate cause of her injuries, she herself was negligent in failing to keep a proper lookout and that negeligence proximately contributed to her injuries. Her position is that, although she has no cause of action against the party whose negligence proximately caused her injuries, she nevertheless has a cause of action against Ellerd, the driver of the other bus, under the doctrine of discovered peril although his bus did not strike her or in any manner injure her, an although he was driving at a lawful rate of speed in the proper lane when she placed herself in a position of peril.

■ It is true that the plaintiff did not sue either McBride, the driver of the bus which struck her, or Ellerd, the driver of the other bus which was going in the opposite direction, but if the respondent, the owner of the busses, is to be charged under the doctrine of discovered peril, its liability exists because of the failure of Ellerd to exercise the care required of him under that doctrine upon the discovery by him of the perilous position of the plaintiff. If the respondent is liable, then, of course, Ellerd would be liable. It is proper then to consider this case just as if Ellerd were the defendant and it was sought to hold him liable for the injuries inflicted by McBride. The case cannot be treated as one in which two or more employees of a defendant are engaged in the operation of a single instrumentality. The situation is not comparable to that of different members of a crew on a railroad train where each is charged with some responsibility for preventing injuries to a third person by the method of operating the train The two buses here involved are independent instrumentalities and are liability of the driver of each must arise from his own negligence and not from the negligence of the other.

We are referred to no case and are aware of none which holds that the doctrine of discovered peril is applicable in a situation like that here presented where the injured person was not in danger from, and not touched by, the vehicle or instrumentality controlled by the defendant sought to be charged under that doctrine. Ellerd did not injure petitioner. His bus never touched her.

In McLaughlin v. Los Angeles Ry. Corporation, 180 Calif. 527, 182 Pac. 44, the Supreme Court of California considered a case almost identical in facts with the instant one. In that case, as here, a woman was negligent in undertaking to cross a street on which two street cars were traveling in opposite directions. The operator of the street car corresponding to the bus driven by Ellerd in this case realized the perilous position in which the plaintiff was placed and brought his car to a stop. She nevertheless was struck by the other street car, which corresponds to the bus driven by McBride in this case. It was sought to predicate liability under the doctrine of discovered peril, known in that state as the doctrine of last clear chance, on the ground that the operator of the car which stopped and did not strike the plaintiff failed to use all the means at his command to prevent injury. The question presented with reference to the applicability of that doctrine was identical with that before us and in disposing thereof the court used this language: "It being conceded that the deceased was negligent, the negligence of the westbound motorman can justify the judgment only upon the theory

that he, as well as the east-bound motorman, had a last clear chance to avoid injuring the deceased. It would be without precedent, so far as we are aware, to apply the doctrine of 'last clear chance,' where, as here, the injured person was never in danger from, and not touched by, the instrumentality over which the individual charged with negligence had control. Conceding that the west-bound motorman did have a last clear chance of avoiding injuring the deceased, the fact remains that he did avoid injuring her. She was imperiled in the first instance, and ultimately injured and killed, by the impact of the east-bound car."

The only authority cited in the application in support of the contention that the doctrine of discovered peril is applicable, is Central Texas & N. W. Ry. Co. v. Gibson, 83 S. W., 862. In that case a horse-drawn carriage was struck at a railroad crossing on a public street in Waxahachie by a box car which was being negligently kicked across the street with no engine attached and one of the occupants of the carriage sued for damages for the injuries sustained in the collision. There was evidence that a brakeman on top the box car and other employees of the company at or near the crossing failed to use all the means at their command after discovering the perilous situation of the plaintiff to prevent the collision. The Court of Civil Appeals held that the facts raised an issue of liability on the doctrine of discovered peril and that the charge on that issue was not erroneous. Writ of error was granted by this court to review that last holding but it was found upon further examination that there was no assignment of error presenting the question concerning discovered peril as to which the court had some doubt and that question was therefore not reviewed or decided. 99 Texas 98, 87 S. W. 814. We are not advised by the opinion what elements of the charge were questioned by this court. It seems clear that the evidence with respect to the brakeman on top the car raised the issue of discovered peril. What the duties of the other employees were and whether the charge dealt therewith we do not know. We do know that there was a question in the mind of this court on some phase of the charge on discovered peril which was left undecided. That case is therefore not to be regarded as an authority in support of petitioner's position.

We have made no holding herein which would exonerate Ellerd from the consequences of his own negligence, should the facts raise an issue thereon. It is not claimed that he willfully or intentionally bottled up petitioner to prevent her escape. Should the evidence raise the issue that he negligently did so, a question not necessary for decision, then that would be an act of primary negligence and not an act so different in quality

from the acts of McBride that the defense of contributory negligence on the part of petitioner, which is available to McBride, would not be available to him, Ellerd. What we hold is that the doctrine of discovered peril should not be extended to cover a case of this nature.

It is our view that the trial court did not err in refusing to submit the requested issues, and that the Court of Civil Appeals did not err in upholding its ruling. The case is therefore affirmed.

Opinion delivered March 13, 1946.

Rehearing overruled April 10, 1946.

MR. JUSTICE SMEDLEY concurring.

The judgment rendered herein, the affirmance of the judgment of the Court of Civil Appeals, has my approval, but the reasons given for the judgment in the majority opinion do not. The opinion holds that the doctrine of discovered peril has no application to the case because "the injured person was not in danger from, and not touched by, the vehicle or instrumentality controlled by the defendant sought to be charged under that doctrine." It is apparent from the opinion as a whole and its emphasis of the fact that the westbound bus did not strike Mrs. Elder, the petitioner, that the words "was not in danger from" are intended to mean that Mrs. Elder was not in danger of being struck by that bus. The decision as reflected by the opinion is made solely upon the conclusion that the doctrine of discovered peril will not be applied to the case because the westbound bus was not about to strike and did not strike Mrs. Elder, and that on that account the driver of the bus owed no duty to try to save Mrs. Elder after he discovered that she was in a position of peril.

The theory of petitioner's case, in that part of her petition in which allegations of discovered peril are made, is that immediately before she was struck by the eastbound bus she was, although she herself was negligent, in a position of peril, and that the westbound bus, as it approached her and without any primary negligence on the part of its driver, was one of the factors of her perilous position, that is, it was a part of the circumstances existing at that particular time that made her position one of peril. She contends that, although she did not know that the eastbound bus was approaching her as she stood in the middle lane and near the line between that lane and the north lane, she was in fact "boxed in" or "bottled up" by that bus

and the westbound bus as it approached in the north lane, and that she could and would have escaped from that position of peril by going upon the north lane or crossing it if the driver of the westbound bus had stopped the bus or reduced its speed or turned it off the pavement and onto the shoulder of the highway.

The paved highway, having three traffic lanes each ten feet eight inches in width separated by marked lines, runs east and west. Mrs. Elder intended to cross the highway from the south to go to a bus stop on the north side of the highway. She had crossed the south line and stopped in the middle lane about two feet from the line between the middle and north lanes. She stopped there to wait for the westbound bus, which she saw approaching in the north lane, to pass. She did not see the eastbound bus. A short time before the eastbound bus struck her it had turned into the middle lane to pass an automobile which was going east in front of it in the south lane. The driver of the westbound bus saw Mrs. Elder standing in the middle lane and near the south line of the north lane when his bus was about seventy-five feet east of her, and he saw the eastbound bus in the middle lane approaching her. He testified that he realized that "she was in a bad spot out there" and that he slowed his bus down so that he was sure he had it under control and could stop it if necessary, and that he pulled his bus over to the north side of the pavement and kept it a safe distance from her.

It clearly appears from the testimony of Ellerd, the driver of the westbound bus, that he saw Mrs. Elder's position of peril, realized that she was in peril, and took precautions to save her. The Court of Civil Appeals in its opinion, written by Justice Boyce, correctly said:

"When Ellerd saw that the appellant (Mrs. Elder) was in danger, he had the duty of getting his bus under control and of operating it in a manner which would permit the appellant, should she become aware of her peril, to step out of the way of the approaching eastbound bus without danger of being struck by Ellerd's bus."

The majority opinion of this Court seems to hold that, although Mrs. Elder was in peril by reason of her position in the highway and the two busses approaching, and although the driver of the westbound bus discovered and realized her peril, he was under no obligation to do anything whatever to help save her to avert her injury. This is to say that the driver would have

been justified in continuing to proceed as he was proceeding and without trying to stop or turn aside, although the result of his doing so, as he knew or should have known, would be to prevent her from entering upon the north lane and thus escaping from the bus that was bearing down upon her from the west. This conclusion is reached solely because Mrs. Elder was about to be struck by the other bus and not by Ellerd's bus.

The new duty, when the position of one in peril is discovered and realized, to use ordinary care to prevent or avoid the injury of that person, arises and is imposed upon principles of humanity. Texas & Pacific Ry. Co. v. Breadow, 90 Texas 26, 31, 36 S. W. 410. In discussing the doctrine this Court has said:

"For, we do not see how conduct can be characterized otherwise than as exhibiting reckless indifference to destroying human life or causing human suffering, where it consists in failure to use ordinary care to avoid the infliction of death or serious bodily injury on another in a position of imminent peril, after it is realied that the imperiled person can not or will not save himself. Ft. Worth & D. C. Ry. Co. v. Shetter, 94 Texas, 199, 59 S. W. 533. And the civil consequences of such conduct should be the same as for a wilful or wanton act. 2 Cooley on Torts (3rd ed.), p. 1442." Wilson v. Southern Traction Company, 111 Texas 361, 367, 234 S. W. 663.

The reasons for the doctrine and the principles upon which it is based are as appropriate to this case as they are to the case in which one is in danger of being struck by the vehicle controlled by the defendant sought to be charged. Petitioner was in a position of peril. The driver of the westbound bus discovered and realized her peril. And if in the time that he had and in the use of ordinary care he could have saved her from injury or prevented or averted her injury, by stopping or turning aside, and his failure to do that was a proximate cause of her injury, his conduct cannot "be characterized otherwise than as exhibiting reckless indifference to destroying human life or causing human suffering" and he and his employer should suffer the civil consequences of his conduct.

The case is not one of requiring a person, who is in no way connected with a situation or circumstances which make the position of another one of peril, to go to the aid of the imperiled person. Here, as has been said, the driver of the westbound bus, through no fault up to that time on his part, found that the bus he was driving and as he was driving it had become a part of a situation or of circumstances that made Mrs. Elder's position

perilous. Why should the doctrine not be applied? Why should not a new duty arise and be imposed upon the driver of the westbound bus to use ordinary care so to handle his own bus as to give Mrs. Elder the opportunity to escape from the position of peril? Should the driver be permitted to shut his eyes and do nothing merely because it was not his bus that was about to strike her?

The majority opinion cites and quotes from McLaughlin v. Los Angeles Ry. Corp., 180 Cal. 527, 182 Pac. 44. The opinion in that case contains an expression, substantially the same as that in the majority opinion herein, that it would be without precedent to apply the doctrine of discovered peril where "the injured person was never in danger from, and not touched by, the instrumentality over which the individual charged with negligence had control." For the reasons that have been stated, it is my opinion that this expression should not be adopted as announcing a correct rule of law. It may be added that it was not essential to the decision of that case, since the court held that the facts in evidence did not warrant a finding that the motorman was negligent after he discovered the peril of the woman who was struck and killed by the other car.

The Court of Civil Appeals, in affirming the judgment of the trial court, held, after discussing the evidence as to what Ellerd did following his discovery of Mrs. Elder's peril, that "the conduct of Ellerd did not raise the issue of liability under the doctrine of discovered peril." It concluded that the evidence did not tend to prove that he failed, in the short time that he had, to use ordinary care to avoid her injury. A careful examination of the evidence convinces me that this conclusion is correct. The Court of Civil Appeals has discussed the evidence and there is no need of repeating it. The same evidence bears upon the question of proximate cause. It is my belief that it cannot reasonably be inferred from the facts in evidence that Ellerd's failure to do more than he did in the effort to save Mrs. Elder was a proximate cause of her injury.

Associate Justice Taylor concurring.

Opinion delivered March 13, 1946.