## PATTERSON et ux. v. PEEL.
### No. 3809.

Court of Civil Appeals of Texas. Beaumont.
Feb. 28, 1941.

Rehearing Denied April 2, 1941.

C. O. Marsh, J. P. Rogge, and McComb & Davis, all of Conroe, for appellants.

Crawford & Crawford, of Conroe, for appellee.

WALKER, Chief Justice.

This suit is an action in trespass to try title by appellee, W. E. Peel, against appellants, Paul Patterson and his wife, to recover the title and possession of a tract of land described by metes and bounds a[nd] containing 522.5 acres of land and being a[ll] of the Evantha Scurry survey in Mont[-] gomery County; appellee also plead th[e] issues of five and ten years' limitatio[n] Vernon's Ann.Civ.St. Arts. 5509, 551[0]. Appellants answered by general demurre[r,] general denial, and by pleas of not guil[ty] and disclaimer. On trial to a jury, judg[-] ment was for appellee for the title and po[s-]

session of the land sued for, with writ of possession, from which appellants have prosecuted their appeal to this court.

■ The location of the Scurry survey, with its relation to the adjoining surveys, is clearly shown by the map and plat made a part of the court's opinion in State et al. v. Humble Oil & Refining Co. et al., Tex.Civ.App., 128 S.W.2d 424, against which writ of error was refused. This map shows that the Scurry survey is bounded on the north by the Bridges, on the east by the Lewis, on the south by the Littlefield and the W. C. R. R. No. 13, and on the west by the Owens (Weeden). Answering special issues in the case at bar, the jury found that the north boundary line of the W. C. R. R. No. 13 did not adjoin the S. B. line of the Bridges, that the N. B. line of the Scurry is the same as the S. B. line of the Bridges; that the N. W. corner of the Littlefield is a common corner with the N. E. corner of the W. C. R. R. No. 13; and that "a line running from the Northwest corner of the Littlefield in a westerly direction would be a common line with said Littlefield and that said line projected would be the north line of the W. C. R. R. Survey No. 13." We overrule all assignments attacking these propositions, without reviewing the supporting evidence. These findings were essential elements supporting the conclusion of the court in fixing the boundaries and corners of the Bridges, the Littlefield, and the W. C. R. R. No. 13; and the other surveys in issue in State v. Humble Oil & Refining Co., which findings as a matter of law were binding upon all parties to this litigation, on the principles of stare decisis reviewed by us, and held controlling, in McDonald v. Humble Oil & Refining Co., Tex.Civ.App., 78 S.W.2d 1068. In the McDonald case, this court had before it the very issues on the location of the corners and lines of the Bridges and Littlefield and the W. C. R. R. No. 13 in controversy in the case at bar.

Appellants introduced in evidence a certain deed to them to a part of the W. C. R. R. Survey No. 13; since no part of the land in controversy lies on that survey, this deed conveyed to appellants no interest in the land claimed by appellee. All propositions based on that deed are overruled.

■ The Scurry survey was patented in 1898; the court did not err in overruling appellants' attacks against the validity of this patent. Appellants had no shadow of title to any part of the Scurry survey by limitation or otherwise. Their possession on the Scurry, if not that of tenants under appellee, was the possession of naked trespassers. The following proposition is announced by 34 Tex.Jur. 260, supported by Greenwood v. McLeary, Tex.Civ.App., 25 S.W. 708: "A trespasser has no standing to assert that a patent to the land was not issued in accordance with the law."

The following general proposition, supported by the authorities cited, is also announced by 34 Tex.Jur. 256: "A patent passes to the patentee the legal title to the land in so far as the State is concerned. The patentee is invested with a title which is good against all persons who cannot show a superior preexisting right. The patent is subject to attack only by the State or by one having a right to the land which is prior or superior to that of the patentee."

■ The jury found the issue of five years' limitation in favor of appellee. Appellants advanced the following propositions against this finding: (a) That the land described in appellee's title papers does not include the land in controversy. This contention is overruled. The land described in appellee's title papers was the Scurry survey, the very land sued for. (b) That appellee was not in exclusive possession of the land in controversy at any time because T. E. McDonald was also in possession, claiming as a record owner of a portion of W. C. R. R. Survey No. 13. On our theory of the location of the W. C. R. R. Survey, under the undisputed evidence, no part of the land sued for is on that survey.

■ The court did not err in refusing to strike the abstract title furnished appellants by appellee. The point made is that the abstract was not filed until more than six months after the service of demand, nor was additional time obtained from the court in which to file the abstract. Within due time after demand, appellee furnished appellants' counsel an abstract of his title, which they accepted without objection. Thirty days before the case went to trial, appellee furnished appellants' counsel an amended abstract of title which contained all the record title to the land in controversy.

■ Appellants assign error against the following argument by appellee's counsel to the jury on the ground "that such argu-

ment was upon the effect of their answers to special issues": "Gentlemen of the Jury: all we ask is that those different surveys remain intact and the property rights as are there will be protected. Now that is fair and honest, and that is all we are asking that this Jury do. And we believe, Gentlemen of the jury, that when you go out in your retirement and understand that Wade made that survey in 1861 and left out an area of 902 varas, that you are going to say that Wade made a mistake, because the Land Office says so; because, Gentlemen of the Jury, that land is there and is the property of W. E. Peel, and all we want is that he be protected in his property rights. I thank you."

This assignment is overruled. The argument was a proper discussion of the issues submitted by the court's charge.

█ We overrule the assignment that the jury first voted that appellee should recover the land, and thereafter answered the special issues "without any consideration of the evidence bearing upon the particular issues, and in a manner calculated by them, designedly, to effectuate their predetermined purpose for W. E. Peel to recover the land in controversy." We give all the testimony brought forward by appellants in support of this assignment:

"Q. What did Mr. Gayle say to you in reference to submitting that to a vote of the jury—as to Mr. Peel recovering the land? A. When we went in there we elected him foreman, and we all sat around the table, and he brought up this question. Let's bring up this just to see whether we can agree or not. Does anybody think Mr. Peel is the owner of the land, is the way he asked the question, I believe, and everybody voted.

"Mr. Pleas Parker, called to testify by plaintiff, testified upon cross-examination:

"Q. And you thought that the jury, from all the evidence, should pass upon who should recover the land, and you felt like you had a right to do that, and that is the way you did it? A. That is the way I done my part of it."

This evidence does not support the assignment.

On the conclusions discussed, the judgment of the lower court should be affirmed; so we pretermit a discussion of appellants' assignments against appellee's record title, and the verdict of the jury on the issue of ten years' limitation, and the contract of tenancy by appellants to appellee, covering the land in controversy.

The judgment of the lower court is in all things affirmed.